UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **GEORGE DEWAYNE DUNN** | **CIVIL ACTION NO. 20-0027** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **JAY RUSSELL, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Plaintiff George Dewayne Dunn, a prisoner at Ouachita Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed the instant proceeding on approximately January 7, 2020, under 42 U.S.C. § 1983. He names the following defendants: Sheriff Jay Russell, Warden Pat Johnson, Captain Campbell, Sergeant Renfro, Lieutenant Stewart, Corporal Yarbrough, and Corporal Daniel.[1]

For reasons below, the Court should dismiss Plaintiff's claims against Sheriff Jay Russell, Warden Pat Johnson, Captain Campbell, and Lieutenant Stewart. The Court should retain Plaintiff's claims against Sergeant Renfro, Corporal Yarbrough, and Corporal Daniel.[2]

### Background

Plaintiff claims that, on October 20, 2019, Sergeant Renfro and Corporal Yarbrough forced him to move from his "cell in 6E into cell 10E" even though Plaintiff told them numerous times that he "had several enemies in that cell" and feared for his life. [doc. #s 1, p. 3; 9, p. 1].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for the retained claims.

Plaintiff claims: "Corporal Daniel heard me tell Sergeant Renfro several times that I had several enemies in Pod 10E and he did not try to stop him from doing the move; he acted as if my life didn't matter at all."[3]  [doc. # 1, p. 3].

Plaintiff claims that four inmates plotted to hurt him and to extort him out of his food and manhood.  *Id.* at 4.  He suggests that Renfro, Yarbrough, and Daniel knew these inmates posed a severe danger because they knew the inmates "committed" "acts" against other inmates.  *Id.*

In Cell 10E, Plaintiff "was faced with credible threats of immediate harm that were not acted upon and acts that amounted to psychological torture from guys that [he] was enemies with . . . ." [doc. # 9, p. 1].  One inmate knocked on his bed, demanded his food, and threatened him. [doc. # 1-2, p. 3].  Other inmates "started walking around the cell and getting themselves all into a frenzy . . . ." *Id.* at 4.  Plaintiff asked Yarbrough for help multiple times, but Yarbrough ignored his pleas and eventually "turned the box off" that Plaintiff was using to request help.  *Id.*

Plaintiff "finally . . . started kicking on the door" to obtain attention and, once "they" answered him, he "checked suicide." *Id.*  The undersigned construes this as an allegation that Plaintiff feigned that he was suicidal so he could escape the cell and transfer to another area designated for potentially suicidal inmates.  For instance, in a grievance he submitted to officials at OCC, he stated, "I asked them if I could check suicide because I had to do something for [sic] to save myself from the pain that they was [sic] trying to subject me to."  [doc. # 1-2, p. 4].

Plaintiff claims: "Lt. Stewart showed deliberate indifference towards me because his officers reported to him after I checked suicide about my situation and he did not address the situation accordingly at all."  [doc. # 1, p. 4].

---

[3] Plaintiff does not specify whether Cell 10E is one small cell or an area containing multiple cells.  He uses "Cell 10E" and "Pod 10E" interchangeably.

2

Plaintiff claims that Captain Campbell, Warden Pat Johnson, and Sheriff Jay Russell read his complaint yet showed no concern for "the wrongs done to" him. *Id.*

Plaintiff seeks $300,000.00 in punitive damages from each defendant, as well as an order declaring that, by causing him emotional distress, "defendants have acted in violation of the United States Constitution . . . ." *Id.* at 5.

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the

4

complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Sheriff Jay Russell, Warden Pat Johnson, Captain Campbell, and Lieutenant Stewart**

To state a failure-to-protect claim, Plaintiff must allege that a defendant's inaction amounted to deliberate indifference. That is, he must allege that a defendant "knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

Plaintiff does not plausibly allege that Sheriff Jay Russell, Warden Pat Johnson, Captain Campbell, or Lieutenant Stewart knew of, and disregarded, a substantial risk of serious harm. He claims that Defendants Russell, Johnson, and Campbell read his "complaint" but showed "no concern about the wrongs . . . done to [him]." [doc. # 1, p. 4]. As above, he was transferred to Cell 10E on October 20, 2020, but he indicates that after he "checked suicide," he was removed either that day or the next day. That in mind, he filed his earliest "complaint" or grievance two to three days later on October 23, 2019, in which he mentioned that he previously "checked

5

suicide" to save himself. [doc. # 1-2, p. 1]. Thus, when Plaintiff allegedly submitted his complaint/grievance to Russell, Johnson, and Campbell, he was no longer exposed to a substantial risk of serious harm.[5]

Similarly, Plaintiff alleges that officers reported to Lieutenant Stewart *after* he "checked suicide." [doc. # 1, p. 4]. Again, he indicates that he was removed from Cell 10E when he "checked suicide." Thus, he was no longer exposed to a substantial risk of serious harm when officers reported his concerns to Lieutenant Stewart.

Essentially, Plaintiff contends that Russell, Johnson, and Campbell did not respond properly to his grievance. A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process."); *Geiger*, 404 F.3d at 371 (holding that an inmate does not have a "federally protected liberty interest in having [] grievances resolved to his satisfaction.").

Accordingly, the Court should dismiss Plaintiff's claims against Russell, Johnson, Campbell, and Stewart.

**3. Defendants Daniel, Yarbrough, and Renfro**

Construing Plaintiff's allegations liberally and in his favor, he alleges plausible failure-to-protect claims against the remaining defendants.

---

[5] Plaintiff does not allege or suggest that he is at risk of being transferred back to Cell 10E or that Cell 10E remains a substantial risk of serious harm to him.

He alleges that, either prior to his transfer to Cell 10E or while in Cell 10E, he informed Sergeant Renfro that he had "several enemies" there and that it was not safe. [doc. #s 1, p. 3; 1-2, p. 1]. He informed Corporal Yarbrough that he feared for his life in Cell 10E. [doc. # 1, p. 3]. He alleges that Corporal Daniel knew he had several enemies in Cell 10E. *Id.* He alleges that Renfro, Yarbrough, and Daniel "were well aware of the severe danger that they subjected [him] to from the acts that [the other prisoners in Cell 10E] committed against other inmates." *Id.* at 4. Thus, he plausibly alleges that these defendants knew of and—by placing him in, or failing to remove him from, Cell 10E—disregarded a substantial risk of serious harm.[6]

Notably, Plaintiff does not allege that other inmates in Cell 10E physically harmed him. That said, Plaintiff need only plead—and indeed has pled—that he was exposed to a substantial *risk* of serious harm.

To be sure, under 42 U.S.C. § 1997e(e), "compensatory damages for mental or emotional injuries [are] non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). Here, however, Plaintiff does not request compensatory relief; rather, he requests punitive damages and declaratory relief. "Despite the limitations imposed by § 1997e(e), . . . a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional rights." *Mayfield v. Texas Dep't Of Criminal Justice*, 529 F.3d 599, 605–06 (5th Cir. 2008). Likewise, a prisoner may seek declaratory relief even in the absence of a physical injury. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Hutchins v. McDaniels*, 512 F.3d 193, 197 (5th Cir. 2007).

---

[6] Plaintiff did mention in his grievance that he only knew the name of one "enemy" in Cell 10E and that Renfro told him that the enemy was no longer there. [doc. # 1-2, p. 3]. However, Plaintiff also mentioned that the other "enemies" were still in Cell 10E. *Id.* That Plaintiff did not know the other "enemies" names does not mean that Renfro was unaware that Plaintiff was exposed to a substantial risk of serious harm.

7

Accordingly, the Court should retain Plaintiff's failure-to-protect claims against Defendants Daniel, Yarbrough, and Renfro.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff George Dewayne Dunn's claims against Sheriff Jay Russell, Warden Pat Johnson, Captain Campbell, and Lieutenant Stewart be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 12th day of March, 2020.

Karen L. Hayes
United States Magistrate Judge